

**FILED**
**Aug 13, 2025**
**11:33 AM(CT)**
**TENNESSEE**
**WORKERS' COMPENSATION**
**APPEALS BOARD**



## TENNESSEE BUREAU OF WORKERS' COMPENSATION
## WORKERS' COMPENSATION APPEALS BOARD

| | |
|---|---|
| Brittney Russell | ) Docket No. 2024-10-4034 |
| | ) |
| v. | ) State File No. 860217-2024 |
| | ) |
| Werner Enterprises, Inc., et al. | ) |
| | ) |
| | ) |
| Appeal from the Court of Workers' | ) Heard August 1, 2025, |
| Compensation Claims | ) in Nashville, Tennessee |
| Thomas L. Wyatt, Judge | ) |

---

### Affirmed and Remanded

---

In this interlocutory appeal, the employer questions the trial court's decision to award benefits following an expedited hearing based on its determination that the assault the employee suffered was inherently connected to her employment. The employee sustained serious injuries when she was assaulted while loading her delivery truck at a customer's location. The employer argued that the employee's injuries arose from a purely personal dispute that had no connection to her employment or, in the alternative, that the incident was a random, "neutral force" assault without sufficient connection to the employment. The trial court concluded that the assault was inherently connected to the employment because it was perpetrated by the husband of a customer who inserted herself in a verbal dispute between the employee and the store manager regarding the manner in which the employee was performing her job. The employer has appealed. Having carefully considered the record and arguments of counsel, we affirm the trial court's decision and remand the case.

Presiding Judge Timothy W. Conner delivered the opinion of the Appeals Board in which Judge Pele I. Godkin and Judge Meredith B. Weaver joined.

John Barringer and Jenna McNair, Nashville, Tennessee, for the employer-appellant, Werner Enterprises, Inc.

Adam Brock-Dagnan, Nashville, Tennessee, for the employee-appellee, Brittney Russell

**Factual and Procedural Background**

The facts of this claim are largely undisputed. Brittney Russell ("Employee"), an Alabama resident, worked as a delivery driver for Werner Enterprises, Inc. ("Employer"), making deliveries to various Dollar General stores. Merchandise delivered to Dollar General locations is typically placed on reusable rolling carts and loaded onto Employer's trucks. On May 16, 2024, Employee's first delivery was to a Dollar General store in Sevierville, Tennessee. When Employee arrived at that location, she unloaded the merchandise going to that store, then went inside to present the store manager, Ray Cadell, with paperwork that needed to be signed. After a brief conversation, Mr. Cadell refused to sign the paperwork until she had loaded the empty rolling carts from previous deliveries onto her truck to return to Employer. Employee explained that, because this was the first of several stops, she did not have enough room in the truck for the empty carts. Mr. Cadell insisted that she load and take the empty carts, and the dispute escalated. As Mr. Cadell contacted his supervisor, Employee attempted to text one of her managers but was unable to get an immediate response.

As Employee and Mr. Cadell were discussing the issue, a shopper, who was apparently a regular customer at the store, inserted herself into the conversation. She made statements that Employee perceived as racially offensive, and she advised Mr. Cadell to force Employee to leave the store. Employee initially went into the back room of the store, but the customer followed her and again told Mr. Cadell to make her leave. In the meantime, the customer stated she had contacted the police. Employee called another Employer manager and requested that she be allowed to leave the store premises without having secured the necessary paperwork because the situation had escalated and she no longer felt safe. She was instructed to load the empty containers onto her truck and was also told that she could not leave without the required paperwork.

After the police arrived, the customer who had become involved in the dispute spoke to the officer then left the store. As she passed Employee, she commented that she would soon "show you just how crazy I am." After the customer left, Employee told the police she did not feel safe and asked the officer to stay at the location while she loaded the empty containers onto her truck. The officer declined and left.

While Employee was loading the empty containers so she could leave, a pickup truck arrived at the store and parked next to her truck. A man exited the truck with some kind of club, approached Employee, and violently struck her in the head with the club. Employee attempted to run away but fell, injuring her hand and legs. The man yelled at Employee to "get the f*** out of here." He then returned to his truck and left. He was later identified by Mr. Cadell as the husband of the customer who had inserted herself in the verbal altercation between him and Employee shortly before.[1]

---

[1] The record indicates the assailant was arrested and charged with aggravated assault.

Following the incident, Employee was transported to a local emergency room for medical care. Since that time, she has also received psychiatric care. Employee did not return to work for Employer, and her psychiatric expert has opined that her ability to return to work in the open labor market has been affected by the incident.[2]

Employee filed a petition for benefits and requested an expedited hearing. Employer denied the claim, asserting that the assault did not arise primarily out of the employment. Employer argued instead that the assault arose from a purely personal dispute between Employee and the assailant and that Employee's presence at a worksite when the assault occurred was merely coincidental. In the alternative, Employer argued that the assault was from a "neutral force" and there was not a sufficient connection to the employment. Finally, Employer asserted that the assault was unrelated to Employee's job performance and appeared to be racially motivated.

After the hearing, the trial court determined the assault stemmed from a verbal altercation over Employee's job performance. The assailant's wife, who was a customer in the store, inserted herself into a verbal dispute between Employee and Employer's customer, Dollar General, which in turn resulted in the assailant driving to the store for the sole purpose of assaulting Employee. The court concluded that Employee would likely prevail at trial in establishing that her injuries arose primarily out of the employment and ordered Employer to pay certain benefits. Employer has appealed.

**Standard of Review**

The standard we apply in reviewing a trial court's decision presumes that the court's factual findings are correct unless the preponderance of the evidence is otherwise. *See* Tenn. Code Ann. § 50-6-239(c)(7) (2024). When the trial judge has had the opportunity to observe a witness's demeanor and to hear in-court testimony, we give considerable deference to factual findings made by the trial court. *Madden v. Holland Grp. of Tenn., Inc.*, 277 S.W.3d 896, 898 (Tenn. 2009). However, "[n]o similar deference need be afforded the trial court's findings based upon documentary evidence." *Goodman v. Schwarz Paper Co.*, No. W2016-02594-SC-R3-WC, 2018 Tenn. LEXIS 8, at *6 (Tenn. Workers' Comp. Panel Jan. 18, 2018). Similarly, the interpretation and application of statutes and regulations are questions of law that are reviewed *de novo* with no presumption of correctness afforded the trial court's conclusions. *See Mansell v. Bridgestone Firestone N. Am. Tire, LLC*, 417 S.W.3d 393, 399 (Tenn. 2013). We are also mindful of our obligation to construe the workers' compensation statutes "fairly, impartially, and in accordance with basic principles of statutory construction" and in a way that does not favor either the employee or the employer. Tenn. Code Ann. § 50-6-116 (2024).

---

[2] The nature and extent of Employee's injuries and potential vocational disability are not at issue in this appeal, so we need not discuss them further.

3

# Analysis

On appeal, the sole issue, as phrased by Employer, is whether Employee "met her burden of proof regarding the primary cause of her current need for treatment and [the] compensability of her injury." Employer's argument is two-fold: first, that the assault did not arise out of a dispute connected to the employment; and second, that the assault stemmed from a "neutral source" and, in considering the totality of the circumstances, is not compensable.

We have previously addressed the compensability of workplace assaults and noted that the Tennessee Supreme Court has categorized such assaults as follows:

> (1) Assaults with an "inherent connection" to employment such as disputes over performance, pay or termination; (2) assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life and not exacerbated by the employment; and (3) assaults resulting from a "neutral force" such as random assaults on employees by individuals outside the employment setting.
>
> . . . .
>
> Assaults with an "inherent connection" to employment are compensable. Assaults stemming from "inherently private" disputes imported into the employment setting from the claimant's domestic or private life *and not exacerbated by the employment* are not compensable. Assaults resulting from a "neutral force" such as random assaults may or may not be compensable depending on the facts and circumstances of the employment.

*Kennard v. Mid-South Transp. Mgmt., Inc.*, No. 2019-08-0805, 2021 TN Wrk. Comp. App. Bd. LEXIS 23, at *8-9 (Tenn. Workers' Comp. App. Bd. July 21, 2021) (citing *Woods. v. Harry B. Woods Plumbing Co.*, 967, S.W.2d 768, 771 (Tenn. 1998) (emphasis added)).

Here, Employer argues the assault had no inherent connection to the employment; rather, it was simply coincidental that Employee was at work when the assault occurred. Although the record indicates the assailant in this case had no prior connection to Employee and had no formal connection to the Dollar General store where the assault occurred, we conclude Employer's argument ignores the genesis of the conflict. It is undisputed that Employee was performing her work duties as a delivery driver for Employer when the conflict with Mr. Cadell began. It is further undisputed that the conflict with Mr. Cadell concerned the manner in which Employee was performing her job duties. Finally, it is undisputed that a customer, the assailant's spouse, inserted herself into the conflict, resulting in a verbal exchange between Employee and the customer *concerning the manner in which she was performing her job* and leading to a call to the police. In short, there is

4

ample evidence in this record that the genesis of the conflict leading to the assault was connected to Employee's performance of her job duties.

Employer insists "the interaction between Employee and [the customer] had no bearing on Employee's performance, pay, or termination." We disagree. The preponderance of the evidence supports a finding that the assault was directly related to the verbal altercation between Employee, Mr. Cadell, and the assailant's spouse concerning Employee's job performance. Moreover, Employer has pointed to no authority, and we are aware of none, *requiring* that such an assault be tied to the worker's "performance, pay, or termination" to be considered as inherently connected to the employment. Although the Supreme Court has described those circumstances as *examples* of assaults with an inherent connection to the employment, the Court did not state that such a list was exhaustive. *See, e.g., Wait v. Travelers Indem. Co.*, 240 S.W.3d 220, 227 (Tenn. 2007).

Finally, Employer emphasizes the lack of any evidence of a relationship between itself, the assailant, and the assailant's spouse in support of its position that this was a "random force" assault that merited a different analysis by the trial court. Employer also maintains the assault was, at least in part, racially motivated, thereby supporting its argument that the assault was not inherently connected to the employment. We conclude, however, that such factors are not determinative of the outcome in this case; rather, the critical issue is the "catalyst [that] spurred the assault." *Id.* at 228. We conclude the catalyst spurring the assault in this case was a customer's decision to insert herself into a disagreement between Employee and Mr. Cadell regarding Employee's job performance. The record contains little or no evidence that the original disagreement had a racial component. Although the conflict may have, at some point, included a racial component, the essential disagreement between Employee, Mr. Cadell, and, ultimately, the assailant's spouse, was directly related to the manner in which Employee performed her job. Thus, we conclude the preponderance of the evidence supports a finding that a work-related disagreement was the catalyst for the assault, and the court appropriately analyzed the case under the framework established by binding precedent. Consequently, we agree with the trial court that Employee presented sufficient evidence at the expedited hearing to indicate a likelihood of prevailing at trial.

## Conclusion

For the foregoing reasons, we affirm the trial court's order and remand the case. Costs on appeal are taxed to Employer.



| | | |
|---|---|---|
| Brittney Russell | ) | Docket No.  2024-10-4034 |
| | ) | |
| v. | ) | State File No.  860217-2024 |
| | ) | |
| Werner Enterprises, Inc., et al. | ) | |
| | ) | |
| | ) | |
| Appeal from the Court of Workers' | ) | Heard August 1, 2025, |
| Compensation Claims | ) | in Nashville, Tennessee |
| Thomas L. Wyatt, Judge | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Appeals Board's decision in the referenced case was sent to the following recipients by the following methods of service on this the 13th day of August, 2025.

| Name | Certified Mail | First Class Mail | Via Fax | Via Email | Sent to: |
|---|---|---|---|---|---|
| John W. Barringer | | | | X | jbarringer@manierherod.com pcarr@manierherod.com |
| Adam C. Brock-Dagnan | | | | X | adam.brockdagnan@forthepeople.com christopher.howell@forthepeople.com |
| Thomas L. Wyatt, Judge | | | | X | Via Electronic Mail |
| Kenneth M. Switzer, Chief Judge | | | | X | Via Electronic Mail |
| Penny Shrum, Clerk, Court of Workers' Compensation Claims | | | | X | penny.patterson-shrum@tn.gov |

Olivia Yearwood
Clerk, Workers' Compensation Appeals Board
220 French Landing Dr., Ste. 1-B
Nashville, TN 37243
Telephone: 615-253-1606
Electronic Mail: WCAppeals.Clerk@tn.gov